IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **Ruth Ann Ray** <br>     *Plaintiff,* <br><br> vs. <br><br> **AmeriHome Mortgage Company, LLC** <br><br>  Serve: C T Corporation System <br>      306 W. Main Street <br>      Suite 512 <br>      Frankfort, KY 40601 <br><br>     *Defendant.* | Case No. 3:20-cv-000172-GNS <br><br> *Electronically filed* |

Comes the Plaintiff, Ruth Ann Ray, by counsel, and for her Complaint against Defendant AmeriHome Mortgage Company, LLC, states as follows:

## Nature of Action

This is an action for actual damages, punitive damages, costs, and attorneys' fees brought by Ruth Ann Ray because AmeriHome Mortgage Company, LLC violated federal law and the standard of care a mortgage servicer owes its customer. On January 8 of this year, Defendant filed a foreclosure action in Bullitt County Circuit Court despite 1) promising not to until it had evaluated Ms. Ray's complete loan modification application and 2) unambiguous federal prohibitions forbidding AmeriHome's precise conduct. This conduct—pursuing a foreclosure while telling its customer it is reviewing the homeowner's loan modification application—is known colloquially as "dual-tracking" and is, without question, against the law.

1

## The Parties

1. Plaintiff Ruth Ann Ray ("Ms. Ray") is a resident of Mount Washington, Bullitt County, Kentucky.

2. Defendant AmeriHome Mortgage Company, LLC ("AmeriHome") is a Delaware limited liability company with its principal address located at 1 Baxter Way, Suite 300, Thousand Oaks, CA 91362, and which does extensive business in the state of Kentucky.

3. At all times material to this Complaint, AmeriHome was a "servicer" of a "federally related mortgage loan"—as those terms are defined in the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2602(1) and § 2605(i)—secured by a lien on residential real property located at 2116 Greenbriar Road, Mount Washington, KY 40047.

## Jurisdiction and Venue

4. Plaintiff alleges claims under the statutes and common law of the Commonwealth of Kentucky.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court because AmeriHome transacts business in this District and Ms. Ray is a resident of this District.

## Facts

7. Ms. Ray works at Vivid Impact as a shipper. See Affidavit of Ruth Ray at **Exhibit 1**.

8. On or about February 2, 2019, Ms. Ray refinanced her home. To do so, she executed a Note with Royal United Mortgage LLC and secured it with a mortgage upon her house at 2116 Greenbriar Road, Mount Washington, KY 40047. See Note, Allonge to Note, and Mortgage attached as **Exhibit 2**. The terms of the refinance increased Ms. Ray's monthly payments from about $750/month to $940/month.

9. While Ms. Ray used to get a lot of overtime at her job, her hours were reduced to full-time in April of 2019.

10. On or about September 24, 2019, Royal United Mortgage assigned the Mortgage to AmeriHome. See Assignment of Mortgage attached at **Exhibit 3**.

11. Fearing that she wouldn't be able to keep up with her mortgage payments, Ms. Ray paid Open Sky Legal Services approximately $4,000 for help applying for a loan modification with her mortgage servicing company, AmeriHome. Affidavit of Ruth Ray, **Exhibit 1**.[1]

12. It was a lot of work to gather the necessary documents and information that AmeriHome needed to before it considered Ms. Ray's loan modification application "complete."

13. But, on January 4, 2020, AmeriHome sent Ms. Ray a letter acknowledging that Ms. Ray had submitted a Loss Mitigation Application Package. Further, AmeriHome stated that upon review, it "determined the application [was] complete and no further information [was] needed at [that] time." See January 4, 2020 letter at **Exhibit 4**.

14. AmeriHome's January 4, 2020 letter further provided that the "application will be reviewed by AmeriHome Mortgage Company, LLC within 30 days of 12/30/2019." The letter went on to state that AmeriHome "[would] not initiate any foreclosure actions or proceedings by sending first notice or filing first legal documents until [Ms. Ray's] complete assistance package has been evaluated." See January 4, 2020 letter at **Exhibit 4**.

15. When Ms. Ray returned home from work on January 10, 2020, she discovered a letter in the mail from the Bullitt County Sheriff's office. The letter explained that a civil action had been filed against her, and that she needed to either come to the courthouse to pick up the summons or they would send someone out to serve her with the papers.

16. Ms. Ray was confused because she had never been sued before; she wasn't sure what she was being sued for.

17. The following Wednesday (January 15), Ms. Ray took time off work (approximately 1.5 hours) and drove to Shepherdsville to pick up the Summons.

18. Upon picking up the Complaint, Ms. Ray discovered that on January 8, 2020—four days after it promised it would "not initiate any foreclosure actions...until your complete

---

[1] The facts in this Complaint related to Ms. Ray's actions, reactions, experiences, and damages can be found in her Affidavit at **Exhibit 1**.

assistance package has been evaluated"—AmeriHome had filed a foreclosure lawsuit against Ms. Ray in Bullitt County Circuit Court. This action—styled *AmeriHome Mortgage Company, LLC v. Ruth Ann Ray*, 20-CI-00023—is currently pending in Bullitt County Circuit Court Clerk. See Summons and Complaint attached at **Exhibit 5**.

19. As of the date of filing of this Complaint, AmeriHome has not notified Ms. Ray of its decision on her loss mitigation application.

20. After getting the Complaint, Ms. Ray called AmeriHome. She asked the customer service agent, "Why am I in foreclosure?" He said, "You're in foreclosure, but it's on hold because of mitigation." He also said, "we are trying to help you." Affidavit at **Exhibit 1**.

21. Ms. Ray also called the courthouse after picking up the Complaint and asked the clerk if she was supposed to get a lawyer. The clerk gave her the number for the Legal Aid Society.

22. Ms. Ray called the Legal Aid Society, and they gave her an appointment to meet with an attorney. To meet with the attorney, she had to drive to Louisville, which she tries to avoid because "driving downtown makes me feel lost." Affidavit at **Exhibit 1**.

23. But, she took half a day off work, drove to Louisville, and met with a lawyer at the Legal Aid Society on January 28th about the foreclosure AmeriHome has filed against her in Bullitt Circuit Court.

24. The whole situation around her home loan has been very stressful to Ms. Ray, beginning with struggling with payments and gathering the documents to apply for a loan modification.

25. However, when she received the foreclosure Complaint, this stressful situation turned into a nightmare. Ms. Ray feels frustrated, confused, angry, and anxious.

26. "I just feel an ache in my heart and try to lean on God. But still, I feel like there's so much weight on me—like I can't move." Affidavit at **Exhibit 1**.

27. Ms. Ray has suffered from anxiety before. In fact, her doctor prescribes her medicines for anxiety, high blood pressure, and cholesterol. But while she's felt anxious in the past, "I've never felt like this before." Affidavit at **Exhibit 1**.

28. Dealing with this foreclosure has impacted her worklife, too. A few weeks ago, after

receiving the foreclosure Complaint, she had an experience where "I just could not stop crying while I was at work." Affidavit at **Exhibit 1**.

29. When her friends at work asked her what was wrong, she said, "I feel like I'm having a nervous breakdown." Ms. Ray's work-friends told one of her bosses what was going on and he talked with her about her problems and provided her a card for someone to talk with about her problems.

30. Ms. Ray has not yet sought professional help for her feelings caused by the foreclosure.

31. Ms. Ray worries that she'll have to miss more work as a result of the foreclosure. Her employer depends on her to be there every day because she's the only one that knows how to do her job.

32. Having to admit to her co-workers and her boss what was going on was deeply embarrassing, and she worries that it has affected their view of her.

33. In all, because of the foreclosure AmeriHome filed while her loan modification application was pending, Ms. Ray has taken time off work, driven places she wouldn't have otherwise driven, and spent time on the phone when she could have been doing other things.

34. The foreclosure filing has also caused her to feel anxious, afraid, embarrassed, confused, and angry.

35. Additionally, AmeriHome has charged to her account additional costs and fees associated with the foreclosure action. See Exhibit 1, Exhibit A.

36. On February 24, 2020, Ms. Ray, through counsel, submitted her Answer and Affirmative Defenses to the foreclosure complaint filed by AmeriHome in Bullitt Circuit Court.

37. AmeriHome's practices, including mortgage servicing abuses and negligence, have caused Ms. Ray to suffer actual damages, including, but not limited to, loss of employment income, travel expenses, fees and costs associated with the unlawfully filed foreclosure, mental and emotional distress, stress, and anxiety.

## Count I: AmeriHome Violated Regulation X's Prohibition on Dual-Tracking(12 C.F.R. § 1024.41(f)(2))

38. Plaintiff reiterates the allegations contained in the paragraphs above, as if fully set forth herein.

39. On January 4, 2020, AmeriHome acknowledged that Ms. Ray had submitted a "complete" Loss Mitigation Application.

40. Federal law prohibits "dual-tracking," requires mortgage servicers to review complete loss mitigation applications before prosecuting a foreclosure, and requires the mortgage servicer to 1) evaluate the person's modification application, 2) make a decision, 3) provide an applicant notice of that decision, and 4) provide information about the decision and time to appeal it before, in this case, filing a foreclosure.

41. Nevertheless, AmeriHome filed a foreclosure action in Bullitt County, Kentucky Circuit Court on January 8, 2020, prior to evaluating Ms. Ray's Loss Mitigation Application Package. 12 C.F.R. § 1024.41(f)(2).

42. Prior to filing the judicial foreclosure action, AmeriHome had not sent Ms. Ray a notice that she was not eligible for any loss mitigation option and the appeal process to challenge that determination. It follows that Ms. Ray had not rejected all loss mitigation options offered by AmeriHome nor did Ms. Ray fail to perform under an agreement on a loss mitigation option. See 12 C.F.R. § 1024.41(f)(2)(i)-(iii).

43. As a result of AmeriHome's violations, Ms. Ray has suffered actual damages, including, but not limited to loss of employment income, travel expenses, mental and emotional distress, stress and anxiety.

44. Ms. Ray is entitled to recover her actual damages, statutory damages, costs, and attorney's fees from AmeriHome pursuant to 12. U.S.C. § 2605(f) and 12 C.F.R. § 1024.41(a).

## Count II: Gross Negligence
## AmeriHome's Conduct Violated the Standard of Care
## it Owed to Ms. Ray

45. Plaintiff reiterates the allegations contained in the paragraphs above, as if fully set forth herein.

46. RESPA and Regulation X provide federal rules for mortgage servicers to follow in evaluation borrowers for loss mitigation options.

47. These unambiguous rules establish a standard and duty of care to borrowers seeking loss mitigation options from the servicers of their mortgage.

48. AmeriHome breached its duty of care by failing to consider Ms. Ray's Loss Mitigation Application Package prior to filing a judicial foreclosure action in state circuit court.

49. AmeriHome's breach of its duty was wanton, reckless, malicious, and/or oppressive manifesting an extreme indifference to Ms. Ray's life and property.

50. AmeriHome's negligent actions rise to a level that permits the imposition of punitive damages.

51. As a direct and proximate result of AmeriHome's breach, Ms. Ray suffered damages, including, but not limited to loss of employment income, travel expenses, lost leisure time, mental and emotional distress, stress, and anxiety.

52. Ms. Ray is entitled to recover actual and punitive damages for AmeriHome's negligent servicing of her mortgage loan.

## Jury Demand

Plaintiff hereby demands a jury trial on all claims to which she is entitled to a jury trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for an Order and Judgment granting the following relief:

1. Payment of Plaintiff's actual damages;

2. For her attorneys' fees as allowed by 12 U.S.C. § 2605(f), and encouraged in equity;

3. For punitive damages, where entitlement to them is proven;

4. A jury trial; and

5. Award Plaintiff any and all other relief to which she appears entitled.

Respectfully submitted,

/s/ Colt C. Sells
Colt C. Sells
Legal Aid Society, Inc.
416 W. Muhammad Ali Boulevard
Suite 300
Louisville, KY 40202
csells@laslou.org
502-614-3127
*Counsel for Ruth Ann Ray*

/s/ Ben Carter
Ben Carter
Senior Litigation and Advocacy Counsel
Kentucky Equal Justice Center
222 S. First Street, Ste. 305
Louisville, KY 40202
ben@kyequaljustice.org
502-303-4062
*Counsel for Ruth Ann Ray*